

**PEAK PROPERTIES**

773 | 281 | 5252   PHONE
773 | 281 | 5256   FAX

www.peakproperties.biz

2201 West Roscoe
Chicago, IL 60618

13816 High Road,
Lockport, Illinois 60441

First Merit Bank, N.A.,
successor in interest to Midwest Bank and Trust Company,
successor to Midwest Bank of Hinsdale,

v.

Emerald Properties, LLC,
an Illinois Limited Liability Company;
Dominic J. Naso; Gregory J. Naso

 

Case Number: 13 CV 05961
Hearing Date and Time: October 17, 2013 - 10:30a.m.

Will County, Illinois
The Honorable Marvin E. Aspen - Judge

Receivership Report #1
October 3, 2013

For the period:
September 12, 2013 through September 30, 2013

Prepared by Michael Zucker
Peak Properties LLC

1

## Overview:

On September 12, 2013, the court entered into an order appointing Michael Zucker, of Peak Properties LLC, the Receiver of the property located at 13816 High Road, Lockport, Illinois 60647. Built in 1980, the property is a 2,190 square foot one (1) story ranch-style home, with a full partially finished basement, three (3) bedrooms and two (2) bathrooms. The borrower stated that the basement had recently flooded and they had to rip off the drywall and carpet to prevent mold growth. The borrower utilizes the house as an office for his construction company. There is also a functional outbuilding with four (4) overhead doors, which is used to store equipment and tools leased out to the borrower.

## Period Recap:

- We successfully obtained a signed lease from the Borrower.
    - Occupied by the tenant, East Iowa Decks.
    - Term: One (1) year lease, commencing January 1, 2013.
    - Rent: $4,000.00 per month.
    - The borrower is the tenant.
- Although the house is used as an office, the overall condition of the property is in fair condition.
- We have "on call" maintenance in place to maintain the property and resolve any maintenance issues that may arise that are beyond the responsibility of the tenant.

## Financial (copy attached):

The following sections highlight the information detailed within the monthly financial statements, provided herein for the period ending September 30, 2013. The monthly financial statements were generated using Yardi Professional Property Management Software which utilizes a cash system of accounting, detailing receipts and disbursements, with no accrual entries.

Please note the financials are very limited due to the fact that Peak has just been appointed Receiver for this property. We are currently working with the Borrower at this time and will have more history and detailed financials in the future receiver report(s).

## Operating Account:

The Receiver has opened and maintains a bank account with FirstMerit Bank in the name of Michael Zucker / Peak Properties LLC, Receiver of the property located at 13816 High Road, Lockport Illinois with the account ending in the last four digits - 2251.

**Available Cash Balance for the period ending September 30, 2013:**

| Rent Received: | $0.00 |
|---|---|
| Less: Expenses | ($0.00) |
| Total Income(Loss) | ($0.00) |

**Expenses / Aged Payables:**

Please note the financials are very limited due to the fact that we have just been appointed the Receiver for this property.

The aged payables are limited to setup fees and a prorated management fee.

**Aged Receivables:**

The tenant / borrower has not paid or turned over any rent. October has not been paid either. We ask Your Honor's permission to retain Marvin Husby for eviction / related purposes should tenant fail to pay rent. Mr. Husby's rate is $175.00 per hour and CV is attached.

**Staffing:**

The general property maintenance responsibilities at the subject property are on an "on call / as needed basis" and will be handled under the supervision of Andy Afshari, Property Manager, and Michael Zucker, the Court Appointed Receiver.

**Maintenance and Repairs:**

After being appointed Receiver, a full walk through was conducted at the subject property by Andy Afshari, at which time the property was deemed to be in fair condition. We will continue to visit and monitor the property regularly and address any issues that may arise.

**Utilities:**

The tenant is responsible for gas, water, electric and garbage.

**Insurance:**

We are in the process of confirming that property and liability policies exist through the borrower, and if so, obtaining a certificate of insurance naming all parties as additional insured. If this option is not available, we will secure our own liability and property policies for the property and name all applicable parties.

**Bond:**

No bond was required.

**Real Estate Taxes (Copy Attached):**

According to the Will County Treasurer's website, the second (2nd) installment of the 2012 property taxes payable in 2013 is now past due in the total amount of $6,675.34.

**Capital Expenditures:**

N/A

**Leasing Activity:**

N/A

**Security Deposits:**

There are no security deposits on file as none were transferred to us by owner/borrower.

**Management Fee:**

The Court has approved a flat monthly management Fee of $400.00 per month as presented in the Initial Fee Schedule to Your Honor.

**Receivership Fees:**

We ask the court to approve a one-time receiver set-up fee of $500.00 and a court appearance fee of $300.00 for the impending court date if applicable on October 17, 2013, as presented in the Initial Fee Schedule provided to Your Honor.

**Certification:**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in the Receiver Report, #1 is true and correct except as to matters therein stated to be on information and belief and as to such matters, the undersigned certifies as aforesaid that he verily believes the same to be true.

WHEREFORE, the Manager respectfully submits the Receivership Report #1 for the period ended September 30, 2013.

_____
Michael Zucker
Peak Properties, L.L.C.
2201 W. Roscoe
Chicago, IL 60618
Phone: 773-697-5223
Fax: 773-281-5256
www.peakproperties.biz
mzucker@peakproperties.biz

# Rent Roll - Occupancy Summary

As of Date: 10/09/2013   Show Excluded Units: No   Show All Amounts: Monthly

Page 1

**Property: 13816 High Rd. - 13816hig**

| Unit | Lease Name | Lease Type | Lease From | Lease To | Term (Months) | Area | Base Rent | Rent Per Area | Recovery Per Area | Misc Per Area | Total Per Area | Deposit |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13816 | East Iowa Decks | Office Gross | 01/01/2013 | 12/31/2013 | 12 | | 4,000.00 | | | | | 0.00 |

### Summary

| | Total Units | Percentage | Total Area | Percentage | Total Base Rent | Total Rent Per Area | Total Recovery Per Area | Total Misc Per Area | Total Charges Per Area | Total Deposit |
|---|---|---|---|---|---|---|---|---|---|---|
| Occupied | 1 | 100.00% | 0 | 0.00% | 4,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Vacant | 0 | 0.00% | 0 | 0.00% | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Totals** | **1** | | **0** | | **4,000.00** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** |

Wednesday, October 9, 2013

## Payable - Aging Detail

Property=13816hig AND mm/yy=09/2013 AND Age as of=09/30/2013

| Vendor Code - Name<br>Invoice Notes | Tran# | Property | Date | Account | Invoice Number | Current Owed | 0 - 30 Owed | 31 - 60 Owed | 61 - 90 Owed | Over 90 Owed |
|---|---|---|---|---|---|---|---|---|---|---|
| **peak - Peak Properties, LLC** | | | | | | | | | | |
| Administrative Property Setup Fee | P-317150 | 13816hig | 09/26/2013 | 7840 | S13816-2013SETUP | 500 | 500 | 0 | 0 | 0 |
| September 2013 Management Fee (Septembe | P-317151 | 13816hig | 09/26/2013 | 7830 | M13816-2013SETUP | 239.94 | 239.94 | 0 | 0 | 0 |
| **Total peak - Peak Properties, LLC** | | | | | | 739.94 | 739.94 | 0 | 0 | 0 |
| | | | | | | 739.94 | 739.94 | 0 | 0 | 0 |

# Will County Treasurer - Illinois
## 302 N. Chicago St., Joliet, IL 60432
## 2012 Levy Real Estate Tax Inquiry

Please be advised that *Total Due is subject to change at any time

| Permanent Index Number (PIN) | Township | Tax Code | Tax Rate | Acres |
|---|---|---|---|---|
| 11-04-02-205-020-0000 | LOCKPORT | 1124 | 8.2502 | 3.77 |

| Owner Information | Assessed Value | Total Tax Amount |
|---|---|---|
| EMERALD PROPERTIES LLC | 159,431 | **13,153.38** |
| % PEAK PROPERTIES | Exemptions | Property Address |
| 2201 W ROSCOE ST | 0 | |
| CHICAGO IL 60618 | | |

Five Year Tax Inquiry        Tax Detail Inquiry

| Installment | 1st Installment | 2nd Installment |
|---|---|---|
| Due Date | JUNE 3, 2013 | SEPTEMBER 3, 2013 |
| Installment Amount | 6,576.69 | 6,576.69 |
| Payment Amount-Tax | 6,576.69 | |
| Payment Amt-Interest/Costs | | |
| Payment Date | 5/22/13 | |
| Balance Due | 0.00 | 6,576.69 |
| Interest Due | 0.00 | 98.65 |
| Cost Due | 0.00 | 0.00 |
| *Total Due | 0.00 | 6,675.34 |

**VISA or Mastercard or Debit Card Payment**

Pay 2nd Installment

**ACH/eCheck Payment**

Pay 2nd Installment

**American Express Payment**

Pay 2nd Installment

Return to Inquire Real Estate Tax Page    Return to Collector's Home Page    Supervisor of Assessments - Property Search

http://willtax.willcountydata.com/maintax/ccwtr52         10/3/2013

**Disaster Area Information**

STATE AID RTE 72 (ALSO KNOWN AS NEW AVE) THC N 05 DEG 05' 56" E, PARALLEL WITH SD STATE AID RTE 72, 297.11 FT TO A PT ON THE N LN OF THE S 626.00 FT OF SD NE1/4; THC S 89 DEG 51' 33" E ALG SD N LN OF THE S 626.00 FT OF SD NE1/4, (SD LN ALSO BEING THE S LN OF TRACT DESC IN DOC# R93-059039) 478.06 TO THE E LN OF SD NE1/4 OF SEC; THC S'LY ALG SD E LN OF THE NE1/4 OF SEC 2, A DIST OF 296.00 FT TO THE POB.

• new search

\* Property information is retrieved periodically from the Local Township Assessor; therefore, the property characteristics may not be the most current. For the most current information regarding your property, please contact your Local Township Assessor and review your property's record card.

© 2011 Will County Supervisor of Assessments.
All rights reserved. Designed and Maintained by NJS Enterprises, Inc.

## LEASE AGREEMENT

This lease agreement was entered into on 01/01/13, between Emerald Properties LLC, a corporation organized under the laws of the State of Illinois, having its principal place of business at 13816 High Rd, Lockport, Will County, Illinois, referred to as "lessor," and East Iowa Decks, a corporation organized under the laws of the State of Illinois, having its principal place of business at 13816 High Rd, Lockport, Will County, Illinois, referred to as "lessee."

### SECTION ONE

### DESCRIPTION OF PREMISES

Lessor leases to lessee the premises located at 13816High Road, Lockport, Will County, Illinois.

### SECTION TWO

### TERM

The term of this lease agreement is 1 year, beginning on 01/01/13, and terminating on 12/31/13.

### SECTION THREE

### RENT

A. The total rent under this lease agreement is $ 4,000.00.

B. Lessee shall pay lessor the above-specified amount in installments of $4,000.00 each month, beginning on 01/01/13, with succeeding payments due on the 1st day of each subsequent month during the term of the lease agreement.

### SECTION FOUR

### USE OF PREMISES

The demised premises are to be used for the purposes of office. Lessee shall restrict its use to such purposes, and shall not use or permit the use of the demised premises for any other purpose without the prior, express, and written consent of lessor, or lessor's authorized agent.

SECTION FIVE

RESTRICTIONS ON USE

A. Lessee shall not use the demised premises in any manner that will increase risks covered by insurance on the demised premises and result in an increase in the rate of insurance or a cancellation of any insurance policy, even if such use may be in furtherance of lessee's business purposes.

B. Lessee shall not keep, use, or sell anything prohibited by any policy of fire insurance covering the demised premises, and shall comply with all requirements of the insurers applicable to the demised premises necessary to keep in force the fire and liability insurance.

SECTION SIX

WASTE, NUISANCE, OR UNLAWFUL ACTIVITY

Lessee shall not allow any waste or nuisance on the demised premises, or use or allow the demised premises to be used for any unlawful purpose.

SECTION SEVEN

UTILITIES

Lessee shall arrange and pay for all utilities furnished to the demised premises for the term of this lease agreement, including, but not limited to, electricity, gas, water, sewer, and telephone service.

SECTION EIGHT

REPAIRS AND MAINTENANCE

Lessee shall maintain the demised premises and keep them in good repair at its expense.

SECTION NINE

DELIVERY, ACCEPTANCE, AND SURRENDER OF PREMISES

A. Lessor represents that the demised premises are in fit condition for use by lessee. Acceptance of the demised premises by lessee shall be construed as recognition that the demised premises are in a good state of repair and in sanitary condition.

B. Lessee shall surrender the demised premises at the end of the lease term, or any renewal of such term, in the same condition as when lessee took possession, allowing for reasonable use and wear, and damage by acts of God, including fires and storms. Before delivery, lessee shall remove all business signs placed on the demised premises by lessee and restore the portion of the demised premises on which they were placed in the same condition as when received.

## SECTION TEN

## PARTIAL DESTRUCTION OF PREMISES

A. Partial destruction of the demised premises shall not render this lease agreement void or voidable, nor terminate it except as specifically provided in this lease agreement. If the demised premises are partially destroyed during the term of this lease agreement, lessor shall repair them when such repairs can be made in conformity with governmental laws and regulations, within 90 days of the partial destruction. Written notice of the intention of lessor to repair shall be given to lessee within 30 days after any partial destruction. Rent will be reduced proportionately to the extent to which the repair operations interfere with the business conducted on the demised premises by lessee. If the repairs cannot be made within the time specified above, lessor shall have the option to make them within a reasonable time and continue this lease agreement in effect with proportional rent rebate to lessee as provided for in this lease agreement. If the repairs cannot be made in 120 days, and if lessor does not elect to make them within a reasonable time, either party shall have the option to terminate this lease agreement.

B. Disputes between lessor and lessee relating to provisions of this section shall be arbitrated. The parties shall each select an arbitrator, and the two arbitrators selected shall together select a third arbitrator. The three arbitrators shall determine the dispute, and their decisions shall be binding on the parties. The parties shall divide the costs of arbitration equally between them.

## SECTION ELEVEN

## ENTRY ON PREMISES BY LESSOR

A. Lessor reserves the right to enter on the demised premises at reasonable times to inspect them, perform required maintenance and repairs, or to make additions, alterations, or modifications to any part of the building in which the demised premises are located, and lessee shall permit lessor to do so.

B. Lessor may erect scaffolding, fences, and similar structures, post relevant notices, and place moveable equipment in connection with making alterations, additions, or repairs, all without incurring liability to lessee for disturbance of quiet enjoyment of the demised premises, or loss of occupation of the demised premises.

## SECTION TWELVE

### NONLIABILITY OF LESSOR FOR DAMAGES

Lessor shall not be liable for liability or damage claims for injury to persons or property from any cause relating to the occupancy of the demised premises by lessee, including those arising out of damages or losses occurring on sidewalks and other areas adjacent to the demised premises during the term of this lease agreement or any extension of such term. Lessee shall indemnify lessor from any and all liability, loss, or other damage claims or obligations resulting from any injuries or losses of this nature.

## SECTION THIRTEEN

### LIABILITY INSURANCE

A. Lessee shall procure and maintain in force at its expense during the term of this lease agreement and any extension of such term, public liability insurance with insurers and through brokers approved by lessor. Such coverage shall be adequate to protect against liability for damage claims through public use of or arising out of accidents occurring in or around the demised premises, in a minimum amount of $500,000.00 for each person injured, $1,000,000.00 for any one accident, and $50,000.00 for property damage. The insurance policies shall provide coverage for contingent liability of lessor on any claims or losses. The insurance policies shall be delivered to lessor for safekeeping. Lessee shall obtain a written obligation from the insurers to notify lessor in writing at least 30 days prior to cancellation or refusal to renew any policy.

B. If the insurance policies required by this section are not kept in force during the entire term of this lease agreement or any extension of such term, lessor may procure the necessary insurance and pay the premium for it, and the premium shall be repaid to lessor as an additional rent installment for the month following the date on which the premiums were paid by lessor.

## SECTION FOURTEEN

### ASSIGNMENT, SUBLEASE, OR LICENSE

A. Lessee shall not assign or sublease the demised premises, or any right or privilege connected with the demised premises, or allow any other person except agents and employees of lessee to occupy the demised premises or any part of the demised premises without first obtaining the written consent of lessor. A consent by lessor shall not be a consent to a subsequent assignment, sublease, or occupation by other persons.

B. An unauthorized assignment, sublease, or license to occupy by lessee shall be void and shall terminate this lease agreement at the option of lessor.

C. The interest of lessee in this lease agreement is not assignable by operation of law without the written consent of lessor.

## SECTION FIFTEEN

## BREACH

The appointment of a receiver to take possession of the assets of lessee, a general assignment for the benefit of the creditors of lessee, any action taken or allowed to be taken by lessee under any bankruptcy act, or the failure of lessee to comply with each term and condition of this lease agreement shall constitute a breach of this lease agreement. Lessee shall have 30 days after receipt of written notice from lessor of any breach to correct the conditions specified in the notice. If the corrections cannot be made within the 30 day period, lessee shall have a reasonable time to correct the default if action is commenced by lessee within 30 days after receipt of the notice.

## SECTION SIXTEEN

## REMEDIES OF LESSOR FOR BREACH BY LESSEE

Lessor shall have the following remedies in addition to its other rights and remedies in the event lessee breaches this lease agreement and fails to make corrections as set forth in Section Fifteen:

A. Lessor may reenter the demised premises immediately and remove the property and personnel of lessee, store the property in a public warehouse or at a place selected by lessor, at the expense of lessee.

B. After reentry, lessor may terminate this lease agreement on giving 15 days' written notice of termination to lessee. Without such notice, reentry will not terminate this lease agreement. On termination, lessor may recover from lessee all damages proximately resulting from the breach, including, but not limited to, the cost of recovering the demised premises and the balance of the rent payments remaining due and unpaid under this lease agreement.

C. After reentering, lessor may relet the demised premises or any part of the demised premises for any term without terminating this lease agreement, at such rent and on such terms as it may choose. Lessor may make alterations and repairs to the demised premises. The duties and liabilities of the parties if the demised premises are relet shall be as follows:

(1) In addition to lessee's liability to lessor for breach of this lease agreement, lessee shall be liable for all expenses of the reletting, for the alterations and repairs made, and for the difference between the rent received by lessor under the new lease agreement and the rent installments that were due for the same period under this lease agreement.

(2) Lessor, at its option, shall have the right to apply the rent received from reletting the premises (a) to reduce lessee's indebtedness to lessor under this lease agreement, not including indebtedness for rent, (b) to expenses of the reletting and

alterations and repairs made, (c) to rent due under this lease agreement, or (d) to payment of future rent under this lease agreement as it becomes due.

If the new lessee does not pay a rent installment promptly to lessor, and the rent installment has been credited in advance of payment to the indebtedness of lessee other than rent, or if rentals from the new lessee have been otherwise applied by lessor as provided for in this section, and during any rent installment period, are less than the rent payable for the corresponding installment period under this lease agreement, lessee shall pay lessor the deficiency, separately for each rent installment deficiency period, and before the end of that period. Lessor may, at any time after such reletting, terminate this lease agreement for the breach on which lessor based the reentry and relet the demised premises.

After reentry, lessor may procure the appointment of a receiver to take possession and collect rents and profits of the business of lessee. If necessary to collect the rents and profits, the receiver may carry on the business of lessee and take possession of the personal property used in the business of lessee, including inventory, trade fixtures, and furnishings and use them in the business without compensating lessee. Proceedings for appointment of a receiver by lessor, or the appointment of a receiver and the conduct of the business of lessee by the receiver, shall not terminate this lease agreement unless lessor has given written notice of termination to lessee as provided in this lease agreement.

## SECTION SEVENTEEN

## ATTORNEY FEES

If lessor files an action to enforce any agreement contained in this lease agreement, or for breach of any covenant or condition, lessee shall pay lessor reasonable attorney fees for the services of lessor's attorney in the action, all fees to be fixed by the court.

## SECTION EIGHTEEN

## CONDEMNATION

Eminent domain proceedings resulting in the condemnation of a part of the demised premises, but leaving the remaining premises usable by lessee for the purposes of its business, will not terminate this lease agreement unless lessor, at its option, terminates this lease agreement by giving written notice of termination to lessee. The effect of any condemnation, where the option to terminate is not exercised, will be to terminate this lease agreement as to the portion of the demised premises condemned, and the lease of the remainder of the demised premises shall remain intact. The rental for the remainder of the lease term shall be reduced by the amount that the usefulness of the demised premises has been reduced for the business purposes of lessee. Lessee assigns and transfers to lessor any claim it may have to compensation for damages as a result of any condemnation.

SECTION NINETEEN

OPTION TO RENEW

Lessor grants to lessee an option to renew this lease agreement for <u>1</u> *year* at a rental of $<u>4,000.00</u> per month, with all other terms and conditions of the renewal lease to be the same as those in this lease agreement. To exercise this option to renew, lessee must give lessor written notice of intention to do so at least <u>30</u> days before this lease agreement expires.

SECTION TWENTY

WAIVERS

Waiver by lessor of any breach of any covenant or duty of lessee under this lease is not a waiver of a breach of any other covenant or duty of lessee, or of any subsequent breach of the same covenant or duty.

SECTION TWENTY-ONE

GOVERNING LAW

It is agreed that this lease agreement shall be governed by, construed, and enforced in accordance with the laws of the State of <u>Illinois</u>.

SECTION TWENTY-TWO

ENTIRE AGREEMENT

This lease agreement shall constitute the entire agreement between the parties. Any prior understanding or representation of any kind preceding the date of this lease agreement shall not be binding upon either party except to the extent incorporated in this lease agreement.

SECTION TWENTY-THREE

MODIFICATION OF AGREEMENT

Any modification of this lease agreement or additional obligation assumed by either party in connection with this agreement shall be binding only if evidenced in a writing signed by each party or an authorized representative of each party.

## SECTION TWENTY-FOUR

### NOTICES

A. All notices, demands, or other writings that this lease agreement requires to be given, or which may be given, by either party to the other, shall be deemed to have been fully given when made in writing and deposited in the United States mail, registered and postage prepaid, and addressed as follows:

To lessor: Emerald Properties, LLC. 13816 High Rd, Lockport, IL 60441

To lessee: East Iowa Decks, 13816 High Rd, Lockport, IL 60441

B. The address to which any notice, demand, or other writing may be given or made or sent to any party as above provided may be changed by written notice given by such party as above provided.

## SECTION TWENTY-FIVE

### BINDING EFFECT

This lease agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the parties.

## SECTION TWENTY-SIX

### TIME OF THE ESSENCE

It is specifically declared and agreed that time is of the essence of this lease agreement.

## SECTION TWENTY-SEVEN

### PARAGRAPH HEADINGS

The titles to the paragraphs of this lease agreement are solely for the convenience of the parties and shall not be used to explain, modify, simplify, or aid in the interpretation of the provisions of this lease agreement.

In witness, each party to this lease agreement has caused it to be executed at 13816 High Road on the date indicated below.

_____  1/1/2013
Emerald Properties, LLC.   Date

_____  1/1/2013
East Iowa Decks Support, Inc.   Date
President

Case: 1:13-cv-05961 Document #: 30 Filed: 10/10/13 Page 18 of 18 PageID #:166

# Law Offices of Marvin L. Husby III

Home Page

**LAW OFFICES of MARVIN L. HUSBY III**
852 West Armitage Avenue
Chicago, Illinois 60614
(p) 773-447-3480
(f) 773-525-8113
marvin@marvinhusbylaw.com

## Marvin L. Husby III

Marvin Husby graduated from Michigan State University with a degree in accounting where he was a three time recipient of the prestigious, E.B. Hill Scholarship award. Upon graduation in 1993, Mr. Husby enrolled at Loyola University School of Law where he was a recipient of the Justinian Society of Lawyers scholarship grant, a two time recipient of the Corpus Juris Secundum award for scholastic excellence and was a Senior Member of Loyola Law Review.

Prior to his graduation from Loyola University School of Law, Marvin Husby clerked at The City of Chicago Corporation Counsel's office. Mr. Husby then interned at the prestigious law firm of Shefsky, Froelich and Devine. After Mr. Husby graduated Cum Laude, from Loyola in 1996, he worked for Shefsky, Froelich and Devine specializing in complex litigation. Mr. Husby has been a member of the Illinois Bar since 1996.

In 2000, Mr. Husby founded the Law Offices of Marvin L. Husby III. Mr. Husby specializes in Landlord Tenant Law with an emphasis in subsidized housing. Mr. Husby has conducted numerous jury trials in Cook County and the surrounding Collar Counties. Mr. Husby represents some of the largest property management companies in the area as well as several government agencies such as HUD and the Chicago Housing Authority. The goal of the Law Offices of Marvin Husby III is to provide experienced services at surprisingly affordable prices.

### EDUCATION

**LOYOLA UNIVERSITY CHICAGO SCHOOL OF LAW**
Juris Doctor *cum laude* - 1996

**MICHIGAN STATE UNIVERSITY**, East Lansing, Michigan
Bachelor of Arts, Accounting - 1993

Content copyright 2013. MARVINHUSBYLAW.COM. All rights reserved.