# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FIRSTMERIT BANK, NATIONAL )
ASSOCIATION, a national banking institution, )
AS SUCCESSOR IN  INTEREST TO THE )
FEDERAL DEPOSIT INSURANCE CORP., )
RECEIVER FOR MIDWEST BANK AND )
TRUST COMPANY, SUCCESSOR TO )
MIDWEST BANK OF HINSDALE, )
                     )     Case No. 13 C 5961
            Plaintiff, )     Hon. Marvin E. Aspen
                     )
            vs. )
                     )
EMERALD PROPERTIES, L.L.C., an Illinois )
limited liability company, DOMINIC J. NASO, )
GREGORY J. NASO, and EAST IOWA DECKS, )
INC., an Illinois corporation, )
                     )
            Defendants.

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff FirstMerit Bank, N.A. ("FirstMerit") filed this action on August 21, 2013, for

foreclosure, breach of contract, and breach of guaranty.  Following the appointment of a receiver,

FirstMerit filed its motion for summary judgment on November 1, 2013, which it amended on

December 3, 2013.  Defendants filed the present motion on December 13, 2013, asking that we

stay briefing and ruling on FirstMerit's motion for summary judgment to allow for discovery.

(Dkt. No. 62.)  Defendants contend that they need time to conduct discovery to properly contest

summary judgment and to prove their affirmative defenses.  As set forth below, we grant the

motion in part and deny it in part.[1]

---

[1] We also very briefly address several other pending motions, as discussed in the conclusion,
including FirstMerit's Motion to Approve Receiver's First Report.  (Dkt. No. 39.)

**BACKGROUND**

For present purposes, we accept as true the facts asserted in the complaint. On or about

March 1, 2010, Defendant Emerald Properties, L.L.C. borrowed $293,886.44 from Midwest

Bank of Hinsdale, predecessor in interest to Midwest Bank and Trust Company ("Midwest

Bank"). (Am. Compl. ¶ 8.) Emerald Properties—through its two members and managers,

defendants Dominic and Gregory Naso—executed several documents evidencing and securing

the debt, including a loan agreement, a promissory note, and a modification of mortgage for

property located in Lockport, Illinois. (*Id.* ¶¶ 5, 8–10.) As consideration for the loan, Dominic

and Gregory Naso also each executed a commercial guaranty on March 1, 2010, guaranteeing all

amounts due Midwest Bank under the loan and note. (*Id.* ¶¶ 24–27, 29–32.)

On May 10, 2010, the Federal Deposit Insurance Corporation ("FDIC") was appointed

receiver of Midwest Bank and assigned the loan and all related documents to FirstMerit. (*Id.* ¶ 4;

*see also* MSJ Ex. 3 (FDIC and FirstMerit 5/10/2010 Purchase and Assumption Agmt.,

Dkt. No. 34-10).)

Pursuant to the note executed by Emerald Properties, all outstanding amounts related to

the loan became immediately payable and due on March 5, 2013. (Am. Compl. ¶ 12.)

According to the complaint, neither Emerald Properties, nor the other defendants, have paid

FirstMerit the amounts due. (*Id.* ¶ 13.) In light of this default, FirstMerit demanded payment in

full on July 31, 2013. (*Id.* ¶ 15.) As of August 14, 2013, Emerald Properties, Dominic Naso,

and Gregory Naso allegedly owed $290,127, plus interest, late charges, attorney's fees and

additional costs accrued. (*Id.* ¶¶ 16, 20J, 22, 27, 32.) FirstMerit's summary judgment motion

claims damages totaling $317,156.09, as of November 7, 2013. (MSJ Ex. 2 (Shachter Aff. ¶ 20,

Dkt. No. 34-2).)

## STANDARD OF REVIEW

Pursuant to Rule 56(d), we may defer consideration of a summary judgment motion, allow for additional discovery, or provide other appropriate relief, where a nonmovant demonstrates "that, for specified reasons, it cannot present facts essential to justify its opposition" to the motion. Fed. R. Civ. P. 56(d). The rule, however, "does not allow a party to block summary judgment simply by offering generalities about the need for further discovery." *Pickenpack v. Third Act Pictures, Inc.*, 13 C 354, 2014 WL 287515, at \*2 (N.D. Ill. Jan. 27, 2014) (quoting *Staten v. Nissan N. Am., Inc.*, 134 F. App'x 963, 965 (7th Cir. June 14, 2005)); *see Xie v. Hospira, Inc.*, 10 C 6777, 2011 WL 1575530, at \*2 (N.D. Ill. Apr. 27, 2011). Rather, the nonmoving party must make a good faith showing that it cannot respond to the pending motion without discovery and must identify specific evidence that it reasonably expects to obtain through discovery that would enable it to rebut the movant's position. *Kalis v. Colgate–Palmolive Co.,* 231 F.3d 1049, 1058 n.5 (7th Cir. 2000); *Pickenpack*, 2014 WL 287515, at \*2; *Xie*, 2011 WL 1575530, at \*2. "The Seventh Circuit has instructed that [we] should construe Rule 56(d) liberally to prevent a premature grant of summary judgment." *Pickenpack*, 2014 WL 287515, at \*2 (citing *King v. Cooke*, 26 F.3d 720, 726 (7th Cir. 1994)); *see also Central Contracting, Inc. v. Kenny Constr. Co.*, 11 C 9175, 2012 WL 832842, at \*2 (N.D. Ill. Mar. 12, 2012).

## ANALYSIS

Here, Defendants argue that they need discovery—which the parties have not yet undertaken—to oppose the summary judgment motion and to support their affirmative defenses.

### A.    LOAN DOCUMENTATION

Defendants contend that they cannot formulate their opposition to FirstMerit's motion without having an opportunity to review the original underlying loan documentation and payment records.  (Mem. at 6.)  Defendants claim that they cannot rely on the summary materials attached to the affidavit of Jason Schachter, a FirstMerit Vice President, because the materials are confusing and because his testimony fails to establish his personal knowledge of the relationship between FirstMerit and its predecessors in interest.  (*Id.* at 6–7.)  Accordingly, Defendants seek discovery to review the original records upon which FirstMerit's damages are based and to depose Mr. Schachter.  (*Id.* at 6.)

In response, FirstMerit claims that the records submitted by Mr. Schachter are not a summary, but represent the entire loan history.  (Resp. at 7–8.)  FirstMerit further argues that the loan history materials fall under the business records exception to the hearsay rule, as set forth in Federal Rule of Evidence 803(6), and thus do not require additional authentication.  FirstMerit also discredits Defendants' concerns about the transaction history, arguing that the loan history materials provide all of the information about payments, advances, and late charges.  (*Id.* at 6–7.)  In short, FirstMerit contends that Defendants already have all the information they need about the loan transactions and resulting damages to oppose summary judgment.

Having reviewed the documents, along with Mr. Schachter's two affidavits, we agree with Defendants that the loan history materials are not as clear as FirstMerit claims.  Defendants have not had any opportunity to inquire about the notations on the records, how certain payments were applied, how damages have been calculated, etc.  Such basic information would help them understand the allegations and raise any damages arguments.  Given the early stages of this litigation, and our mandate to liberally construe Rule 56(d), we grant Defendants' motion in part.

We hereby grant the parties approximately forty-five days to conduct discovery into the loan history materials and related underlying transactions. At this juncture, we need not address Defendants' specific evidentiary challenges to Mr. Schachter's affidavit and the loan history documentation.

## B.     AFFIRMATIVE DEFENSES

We turn then to the separate question of whether Defendants require discovery to support their affirmative defenses. With their answer, Defendants asserted three affirmative defenses: (1) lack of standing; (2) failure to mitigate damages; and (3) breach of the covenant of good faith and fair dealing. In the current briefing, Defendants also attempt to raise the defense of FirstMerit's alleged breach of the duty of good faith implied in all guaranties. (Mem. at 8–9; Reply at 8–10.) As discussed below, Defendants are not entitled to discovery because these defenses cannot help them withstand FirstMerit's motion for summary judgment.

### 1.     Standing

Defendants contend that FirstMerit's summary judgment materials, including Mr. Schachter's affidavit, fail to demonstrate the bank's standing as owner and holder of the note and accompanying loan documents. (Mem. at 7–8.) As FirstMerit points out, however, Mr. Schacter testified in his affidavit that FirstMerit is "the owner and legal holder" of the note, the loan agreement, the mortgage and the guaranties "as a result of the FDIC's assignment of same to" FirstMerit. (Schachter 10/31/13 Aff. ¶ 6 (Dkt. No. 60-2).) FirstMerit submitted documents supporting Mr. Schacter's assertion with its summary judgment motion.[2] (*See* MSJ Exs. 3–5.)

---

[2]  We take judicial notice of the Purchase and Assumption Agreement entered into by the FDIC and FirstMerit on May 14, 2010. *See FirstMerit Bank, N.A. v. Wolf Prof. Ctr.*, 13 C 2750, 2013 WL 4847491, at *4 n.1 (N.D. Ill. Sept. 10, 2013); *Drobny v. JP Morgan Chase Bank, NA.*, 929 F. Supp. 2d 839, 845 n.2 (N.D. Ill. 2013). (MSJ Ex. 3 (FDIC and FirstMerit 5/10/2010 Purchase

5

Defendants claim that FirstMerit must produce the underlying loan documents to demonstrate any mergers, assignments, or transfers of the note is similarly unavailing.  (Mem. at 7–8.)  FirstMerit has alleged and demonstrated, without question, that it acquired Defendants' debt from the FDIC on or about May 14, 2010, after the FDIC took receivership of Midwest Bank.  (Resp. at 10.)  FirstMerit rightly argues that, through the purchase agreement, the FDIC exercised its power to "transfer any asset or liability of the institution in default . . . without any approval, assignment, or consent with request to such transfer."  12 U.S.C. § 1821(d)(2)(G)(i)(II).  (Resp. at 10–11.)  Defendants did not respond to this argument in their reply brief and have not contested the FDIC's statutory authority to transfer MidWest Bank assets to FirstMerit without any approvals, assignments, or consent.  (*See* Reply at 7–8.)  Under the circumstances, we agree with FirstMerit that no proof of assignment or other transaction is necessary for FirstMerit to establish its standing as owner and holder to enforce the note, mortgage, and guaranties that it received from the FDIC three years prior to Defendants' default.[3]  *See also FirstMerit Bank, N.A. v. Wolf Prof. Ctr.*, 13 C 2750, 2013 WL 4847491, at *4 (N.D. Ill. Sept. 10, 2013) (noting that there was no dispute that "the FDIC was the successor in interest to Midwest and Midwest transferred its assets to the FDIC on May 14, 2010"); *Drobny v. JP Morgan Chase Bank, NA*., 929 F. Supp. 2d 839, 845 (N.D. Ill. 2013) (rejecting an argument that the bank could not foreclose without producing a mortgage assignment because the FDIC, as

---

and Assumption Agmt., Dkt. No. 34-10)).)  We add that Defendants do not contest the accuracy of this document.

[3]  FirstMerit is also correct that it is not obligated under the Illinois Mortgage Foreclosure Law to provide the original note for Defendants' review.  *Parkway Bank & Trust Co v. Korzen*, 13 C 380, 2013 IL App (1st) 130380, at *5–7 (1st Dist. Sept. 23, 2013); *First Fed'l Savings & Loan Assoc. of Chi. v. Chi. Title & Trust Co.,* 155 Ill. App. 664, 665, 508 N.E. 2d 287, 288–89 (1st Dist. 1987).

receiver of the prior bank, "was empowered to transfer the [b]ank's assets without an assignment").

Accordingly, Defendants have failed to show that discovery, if allowed, could reveal any information or evidence that might defeat the pending motion for summary judgment based on their standing defense.

### 2. Breach of the Covenant of Good Faith and Fair Dealing

In their third affirmative defense, Defendants argue that FirstMerit breached the implied covenant of good faith and fair dealing by failing to "modify, refinance, or extend the maturity date of the Note, despite assurances it would do so." (Ans. & Aff. Defs. at 16 ¶ 2.) Defendants claim that FirstMerit reneged on its promise to enter into a forbearance agreement if Defendants made a particular payment. (*Id.* ¶¶ 2–4; *see also* Mem. at 8–9; Reply at 8–10.) Defendants assert that FirstMerit's failure to finalize a forbearance agreement, despite Defendants' payment of more than $8000, constitutes a breach of this implied covenant.

In response, FirstMerit contends that this defense is barred by the Illinois Credit Agreements Act ("ICAA"), 815 ILCS 160/1 *et seq.* (Resp. at 12–13.) The ICAA "adopted a 'strong form' of the statute of frauds" and requires "a writing signed by both parties to modify a written credit agreement covered by [it]." *Harris N.A. v. Hershey*, 711 F.3d 794, 799 (7th Cir. 2013); *LaSalle Bank Nat'l Ass'n v. Paramont Props.*, 588 F. Supp. 2d 840, 853–54 (N.D. Ill. 2008). Under the ICAA, a debtor cannot sue based on an "agreement by a creditor to modify or amend an existing credit agreement or to otherwise take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies in connection with an existing credit agreement, or rescheduling or extending installments due under an existing credit agreement"— unless the new agreement or amendment itself satisfies the ICAA's written requirements. 815

ILCS 160/3; *see Paramont Props.*, 588 F. Supp. 2d at 853–54, 56–57; *Household Commercial*

*Fin. Servs., Inc. v. Suddarth*, 01 C 4355, 2002 WL 31017608, at *4–7 (N.D. Ill. Sept. 9, 2002).

Thus, according to FirstMerit, Defendants cannot pursue any defense based on the bank's alleged

breach of a promise to amend the terms of the Emerald Properties loan documents or forbear

from enforcing its remedies thereunder.  (Resp. at 12–13.)

In their reply brief, Defendants fail to oppose, or otherwise address, FirstMerit's ICAA

argument.  They do not claim, for example, that the underlying loan documents do not constitute

credit agreements covered by the ICAA.  Nor do they claim that the parties memorialized the

alleged forbearance agreement in any fashion that might satisfy the requirements of the ICAA.

Courts have routinely held, however, that counterclaims or affirmative defenses relying on oral

(or non-memorialized) agreements to modify existing credit agreements are barred by the

ICAA.[4]  *Hershey*, 711 F.3d at 800 (holding that the ICAA precluded the affirmative defense of

breach of covenant of good faith and fair dealing); *Gen'l Elec. Business Fin. Servs., Inc. v.*

*Galbut*, 10 C 5010, 2011 WL 5373990, at *7 (N.D. Ill. Nov. 2, 2011) (same); *Suddarth*, 2002

WL 31017608, at *6 (same); *MB Fin. Bank v. THG Rest. Group, LLC*, 10 C 5854, 2011 WL

1630131, at *3 (N.D. Ill. Apr. 28, 2011) (same); *Bank of Am. N.A. v. 108 N. State Retail LLC*,

401 Ill. App. 3d 158, 173, 928 N.E.2d 42, 56 (1st Dist. 2010); *see also Teachers Ins. & Annuity*

*Ass'n of Am. v. LaSalle Nat'l Bank*, 295 Ill. App. 3d 61, 70, 73–74, 691 N.E.2d 881, 888, 890–91

(2d Dist. 1998) (further holding that the duty of good faith and fair dealing did not extend to

---

[4]  Moreover, "[t]he duty of good faith and fair dealing only applies to *existing* contracts."
*LaSalle Nat'l Bank Ass'n v. Gabayzedeh*, 02 C 734, 2003 WL 134997, at *6 (N.D. Ill. Jan. 17,
2003).  To the extent that Defendants contend FirstMerit's conduct violated such a duty in the
course of negotiations for the unconsummated forbearance agreement, such a claim must fail.
*Id.*; *see RBS Citizens, N.A. v. Sanyou Import, Inc.*, 11 C 1820, 2011 WL 4790936, at *2 (N.D. Ill.
Oct. 6, 2011) ("Specifically, the duty only arises upon the formation of a contractual
relationship.").

purported oral credit agreements). Consistent with the ICAA and related precedent, we conclude

that Defendants are not entitled to discovery on this third defense because it is legally defective.

In addition, Defendants have failed to sufficiently articulate the defense for Rule 56(d)

purposes. The duty of good faith and fair dealing implied in Illinois contracts "requires a party

vested with contractual discretion to exercise that discretion reasonably and not arbitrarily,

capriciously, or in a manner inconsistent with the reasonable expectations of the parties."

*Teachers Ins. & Annuity Ass'n of Am.*, 295 Ill. App. 3d at 73, 691 N.E.2d at 890; *Bank One,*

*Springfield v. Roscetti*, 309 Ill. App. 3d 1048, 1059–60, 723 N.E.2d 755, 764 (4th Dist. 2000).

This duty "aids the construction of a contract susceptible to two meanings." *Sanyou Import, Inc.*,

2011 WL 4790936, at *2; *Bank of Am., N.A. v. Shellbourne Devel. Group, Inc.*, 732 F. Supp. 2d

809, 823–24 (N.D. Ill. 2010); *see FDIC v. Rayman*, 92 C 3688, 1995 WL 505960, at *8 (N.D. Ill.

Aug. 23, 1995) (noting that the "requirement of good faith and fair dealing is a gap filler").

Defendants cannot wield the duty of good faith to create a discretionary term or otherwise "read

an obligation into the documents that does not exist." *Roscetti*, 309 Ill. App. 3d at 1060, 723

N.E.2d at 764. Here, Defendants have not alleged that the loan documents gave FirstMerit

discretion to undertake some action, or how FirstMerit may have exercised that contractual

discretion unreasonably. (*See* Ans. & Aff. Defs. at 15–16 ¶¶ 1–4.) Accordingly, even if the

ICAA did not preclude this argument, Defendants have not identified the elements of the defense

or what evidence they expect to obtain in discovery that might support their theory. *See Roscetti*,

309 Ill. App. 3d at 1060, 723 N.E.2d at 764 (rejecting guarantor's good-faith argument where he

failed to identify any contractual provisions that vested the bank with discretion, or an obligation,

to renew the floor plan or the note).

3.	Breach of the Duty of Good Faith Implied in the Guaranties

In their response brief, Defendants propose a similar affirmative defense with respect to the guaranties specifically.  Defendants contend that FirstMerit violated the duty of good faith implied in all guaranty contracts, which requires the lender to refrain from conduct that would injure the guarantor.  (Mem. at 8–9; Reply at 8–10 (citing *Brzozowski v. Northern Trust Co.*, 248 Ill. App. 3d 95, 102, 618 N.E.2d 405, 410 (1st Dist. 1993).)  Defendants insinuate that FirstMerit impaired the value of the collateral such that Defendants' liability should be reduced.  (Mem. at 9.)  They generally claim in the briefs that FirstMerit breached the duty of good faith in some unspecified manner "causing increased injury to Guarantors which may affect [the bank's] ability to seek judgments on the personal guarantees."  (Reply at 8.)

There are several problems with this proposed affirmative defense that necessitate denial of Defendants' motion.[5]  First, as FirstMerit points out, Dominic and Gregory Naso expressly waived the collateral impairment defense in the guaranties.  (Am. Compl. Exs. F (D. Naso Guaranty) and G (G. Naso Guaranty).)  The guaranties state that the guarantors waived "any and all rights or defenses based on suretyship or impairment of collateral, including . . . (D) any right to claim discharge of the indebtedness on the basis of unjustified impairment of any collateral." (Am. Compl., Ex. F at 1.)  Defendants did not counter this argument in their reply brief and have not otherwise challenged the application of the waiver term to this defense.  They are not entitled to discovery on a defense they apparently waived.[6]

Second, if Defendants' good faith defense to the guaranties seeks to mirror their good faith and fair dealing defense (rather than raise an impairment defense), it must fail for the same reasons discussed above.  That is, the ICAA also bars this proposed affirmative defense to the

---

[5]  For present purposes, we overlook the fact that Defendants have not yet pled this defense.
[6]  Defendants also have not suggested how the collateral has been impaired.

extent it relies on FirstMerit's alleged failure to modify the underlying terms of the loan or

execute a forbearance agreement. *See, e.g.*, *Galbut*, 2011 WL 5373990, at *7; *Roscetti*, 309 Ill.

App. 3d at 1060, 723 N.E.2d at 764.

Third, to the extent that this proposed defense asserts a failure to mitigate argument with

respect to the alleged breaches of guaranty, such a claim appears to lack merit. By their terms,

the guaranties executed by Dominic and Gregory Naso are absolute and unconditional. (Am.

Compl. Exs. F–G at 1 ("Guarantor absolutely and unconditionally guarantees full and punctual

payment and satisfaction of the Indebtedness.").) "[W]hile a duty to mitigate damages is

generally imposed in contract cases, . . . it has no application where a party has unconditionally

guaranteed payment on a note." *Grossich v. Collet*, 89 C 144, 1989 WL 81977, at *2 (N.D. Ill.

July 10, 1989); *Galbut*, 2011 WL 5373990, at *8; *MB Fin. Bank, N.A. v. Planet Airways, Inc.*, 04

C 893, 2005 WL 1189597, at *3 (N.D. Ill. May 4, 2005). Thus, we do not perceive any need for

discovery on this defense if framed as a failure to mitigate.

Finally, Defendants have not articulated any other good-faith defense theories that could

help them evade summary judgment. They vaguely claim that FirstMerit "breached its duty of

good faith, and in doing so, caused increased injury to Guarantors," but they never specifically

identify the misconduct underlying the alleged breach. We have addressed three possibilities

above, and we decline to permit discovery into any further unspecified misconduct. Defendants

have neither articulated their theory, nor described the evidence they expect to uncover, as

required to succeed under Rule 56(d).

4. Failure to Mitigate

In their second affirmative defense, Defendants allege that FirstMerit failed to mitigate its

damages by "refusing to refinance the Emerald Properties, LLC Loan."[7] (Ans. & Aff. Defs. at

15, 2d Aff. Def. ¶¶ 1–2.) They contend that FirstMerit has "intentionally and unnecessarily

increased any damages suffered in the form of attorneys' fees, costs, appraisal fees, and receiver

costs" and, moreover, that all such expenses are "unwarranted because the value of the [property]

is equal to or in excess of the principal amount of any indebtedness." (*Id.* ¶ 2.) FirstMerit argues

that this defense is meritless because it had no obligation to renegotiate, modify, or renew the

terms of the loan to accommodate Defendants' breach. (*See* Resp. at 12–13.)

"Under Illinois law, mitigation of damages is an affirmative defense on which the

defendant bears the burden of proof." *Ner Tamid Congregation of N. Town v. Krivoruchko*, 638

F. Supp. 2d 913, 919 (N.D. Ill. 2009); *Home Loan Ctr., Inc. v. Flanagan*, 10 C 6787, 2012 WL

1108132, at *8 (N.D. Ill. Apr. 2, 2012); *RIV VIL, Inc. v. Tucker*, 979 F. Supp. 645, 660 (N.D. Ill.

1997). The defense affects only damages, not liability, such that "the amount of loss that could

reasonably have been avoided by stopping performance or making substitute arrangements is

simply subtracted from the amount" otherwise recoverable. *Ner Tamid Congregation*, 638 F.

Supp. 2d at 919–20. The duty to mitigate requires the non-breaching party to "exercise

reasonable diligence and ordinary care in attempting to minimize its damages," *Flanagan*, 2012

WL 1108132, at *8, but does not oblige it to "take steps that involve undue risk or burden," *Ner*

*Tamid Congregation*, 638 F. Supp. 2d at 920 (internal quotation omitted). *See also Tucker*, 979

---

[7] We consider this defense as applicable to the non-guaranty claims only for the reason
discussed above. *See Grossich*, 1989 WL 81977, at *2; *Galbut*, 2011 WL 5373990, at *8; *Planet
Airways, Inc.*, 2005 WL 1189597, at *3. In light of our rulings, we need not address whether the
existence of the unconditional guaranties precludes Defendants' success on a failure to mitigate
defense for the breach of contract and foreclosure claims.

F. Supp. at 660; *Slovick v. All Am. Bank of Chi.*, 163 Ill. App. 3d 741, 747, 516 N.E.2d 947, 951

(1st Dist. 1987) (further explaining that only foreseeable damages need be mitigated). In

addition, the breaching party may not invoke this duty "as grounds for a hypercritical evaluation

of the injured party's conduct, or as evidence that the injured party might have taken steps which

seemed wiser or would have been more advantageous to the breaching party." *Tucker*, 979 F.

Supp. at 660 (quoting *Pioneer Bank & Trust Co. v. Seiko Sporting Goods*, 184 Ill. App. 3d 783,

790–91, 540 N.E.2d 808, 813 (1st Dist. 1989)).

Pursuant to these principles, we deny Defendants' request for discovery into this

affirmative defense. Defendants have not explained how the common law duty to mitigate could

require FirstMerit to refinance the loan—both because of and despite Defendants' undisputed

breach—where the loan documents did not so require and where the parties thus would need to

renegotiate existing contractual terms and remedies to do so. Courts have rejected similar

arguments. In *Ner Tamid Congregation*, for example, the district court concluded that, after

defendants' breach, the plaintiff had no obligation "to renegotiate the contract and agree to terms

more favorable" to the defendant, particularly where renegotiation would require plaintiff to

absorb added financial risk. 638 F. Supp. 2d at 921. The Illinois appellate court in *American

Fidelity Fire Insurance Company* rejected a mitigation theory that would have required the

plaintiff "to accept [defendant's] offer to perform the original contract on new or modified

terms." *Am. Fidelity Fire Ins. Co. v. General Ry. Signal Co.*, 184 Ill. App. 3d 601, 614, 540

N.E.2d 557, 566 (1st Dist. 1989); *see also Grossich*, 1989 WL 81977, at *2 (concluding that

plaintiffs "did not forfeit their right to the full amount due under the guaranty by refusing to

agree to certain conditions that would have increased the likelihood that the borrowers could cure

their default on the note"); *Coppola v. Marden, Otis & Hastings Co.*, 282 Ill. 281, 285, 118 N.E.

499, 500 (Ill. 1918) ("[I]t comes with an ill grace from a party who has refused to perform the agreement to demand that the other party, who has not been at fault, should do something contrary to the terms of the contract to mitigate or lessen the damages."). Defendants have offered no authority in support of their claim, which, contrary to precedent, would seemingly obligate FirstMerit to take steps that Defendants consider "wiser or . . . more advantageous" instead of pursuing its contractual remedies in this litigation. *Tucker*, 979 F. Supp. at 660.

In short, Defendants' mitigation theory is inconsistent with the principles underlying the mitigation defense and must fail. As such, discovery is not warranted.

## CONCLUSION

As discussed above, Defendants' Rule 56(d) motion (Dkt. No. 62) is granted in part and denied in part. The parties have through May 14, 2014 to conduct discovery into the loan history materials and related underlying transactions. We deny Defendants' request for discovery into their affirmative defenses.

Following discovery, FirstMerit may renew or amend its motion for summary judgment, if it chooses, on or by June 5, 2014. Defendants must respond to any pending motion for summary judgment on or by June 26, 2014, and FirstMerit's reply shall be filed on or by July 3, 2014.

This case is hereby set for a status call on August 7, 2014 at 10:30 a.m.

In light of the pending discovery and summary judgment briefing, we enter and continue the following motions: (1) Amended Motion for Judgment of Foreclosure and Sale (Dkt. No. 59); (2) Motion to Appoint Selling Officer (Dkt. No. 37); and (3) Petition and Affidavit for Attorney's Fees and Court Costs (Dkt. No. 38). FirstMerit shall re-notice these motions as needed in the future.

14

The following motions are hereby stricken because FirstMerit has filed amended, superseding versions thereof: (1) Motion for Summary Judgment (Dkt. No. 34); and (2) Motion for Judgment of Foreclosure and Sale (Dkt. No. 35).

Finally, we briefly address FirstMerit's Motion to Approve Receiver's First Report and Approve Request for Leave to Hire Eviction Attorney Therein, (Dkt. No. 39), as well as FirstMerit's recently-filed Motion to Approve Receiver's First Report and Receiver's Supplement to the First Report, (Dkt. No. 74), which includes updated information. Defendants previously objected to the Receiver's first report, on the basis that the request to hire an eviction attorney was premature. (Obj. to Mot. to Approve (Dkt. No. 61) ¶¶ 2, 7.) Defendants may file any objections to FirstMerit's March 26, 2014 Motion to Approve Receiver's First Report and Receiver's Supplement to the First Report on or by April 11, 2014. It is so ordered.

_____
Marvin E. Aspen
United States District Judge


Dated:        Chicago, Illinois
              March 28, 2014