IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIRSTMERIT BANK, NATIONAL ASSOCIATION, a national banking institution, AS SUCCESSOR IN INTEREST TO THE FEDERAL DEPOSIT INSURANCE CORP., RECEIVER FOR MIDWEST BANK AND TRUST COMPANY, SUCCESSOR TO MIDWEST BANK OF HINSDALE, <br><br>Plaintiff,<br><br>vs.<br><br>EMERALD PROPERTIES, L.L.C., an Illinois limited liability company, DOMINIC J. NASO, GREGORY J. NASO, and EAST IOWA DECKS, INC., an Illinois corporation,<br><br>Defendants. | Case No. 13 C 5961<br>Hon. Marvin E. Aspen |

## **ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff FirstMerit Bank, N.A. ("FirstMerit") filed this action on August 21, 2013, for foreclosure, breach of contract, and breach of guaranty. The parties are currently engaged in limited discovery, with the anticipation that FirstMerit will renew an earlier motion for summary judgment.

We appointed a receiver for the property—Michael Zucker of Peak Properties ("Receiver")—on September 12, 2013. (Dkt. No. 20; *see also* Dkt. No. 41.) Presently before us are FirstMerit's Motion to Approve Receiver's First Report and Approve Request for Leave to Hire Eviction Attorney Therein, (Dkt. No. 39), as well as FirstMerit's recently-filed Motion to Approve Receiver's First Report and Receiver's Supplement to the First Report, (Dkt. No. 74), which includes updated information. On April 11, 2014, Defendants filed objections to

1

Receiver's report and supplement. (Dkt. No. 78.) As set forth below, the motions for approval are granted in part and denied in part.

## ANALYSIS

In the report and supplement, Receiver describes the attributes and status of the property in several respects. Receiver also identifies, and requests reimbursement for, certain expenses related to the property and its management. In the supplement, Receiver additionally states that the property tenant, East Iowa Decks, Inc. ("Tenant"), failed to renew the lease by its terms. As a result, Receiver has returned each monthly rent payment submitted by the Tenant beginning in January 2014. (Mot. to Approve Report & Suppl., Ex. B at 4 (Dkt. No. 74-2).) Defendants raise several valid objections to Receiver's report and requests for reimbursement, which we address briefly below.

### A. Costs for Court Appearances

Defendants contend that Receiver's proactive requests for reimbursement for appearances at two scheduled hearings should be denied because both hearings (January 9, 2014 and April 3, 2014) were continued to later dates. (Obj. ¶ 10; *see* Mot. to Approve Report & Suppl., Ex. A at 5 & Ex. B at 5.) FirstMerit acknowledges that it has not yet presented the motion for approval of Receiver's First Report at a hearing due to the court's rescheduling of all status dates. (Mot. to Approve Report & Suppl. ¶¶ 4, 8.) Indeed, we have not held a status hearing in this matter since the filing of the initial approval motion. Accordingly, we deny Receiver's requests for reimbursement of costs for intended court appearances that ultimately did not occur.

### B. Costs for Double Insurance

Defendants also challenge Receiver's request for reimbursement of $3,025 for property and liability insurance policies. (Obj. ¶¶ 11–15; *see* Mot. to Approve Report & Suppl., Ex. B

at 4, 6, 12 (Cert. of Liability Ins.).) According to Receiver, it obtained insurance policies covering Plaintiff, Defendant and Receiver, effective December 26, 2013. Although Receiver received an insurance binder from Defendants on March 29, 2014, "effectively double insuring the property," the insurance binder does not establish liability coverage or show that FirstMerit is named on the policy as the mortgagee. (Mot. to Approve Report & Suppl., Ex. B at 4.)

Defendants assert, however, that Receiver's insurance policies were unnecessary because the property was already insured, including liability coverage. According to Defendants, Receiver knew—well before it obtained its own insurance—that Defendants had maintained and/or renewed their insurance and had added Receiver as an additional insured party. (Obj. ¶¶ 11–15.) In support of their position, Defendants attached copies of email correspondence between Dominic Naso and Receiver, as well as evidence of insurance for the property dated October 4, 2013. Defendants contend that they provided Receiver with all the information requested and relied on Receiver's assurances that Receiver would add itself and FirstMerit and take other steps as needed. (Obj. ¶¶ 11–13 & Ex. 1 at 1.) Defendants further claim that Receiver never informed them of any deficiencies in their coverage or their proof thereof. (*Id.* ¶¶ 12–13.) As a result, Defendants contest Receiver's right to payment for doubly insuring the property.

In light of the legitimate dispute over the necessity of Receiver's insurance, we cannot determine whether Receiver's decision to obtain insurance was reasonable. As a result, we deny Receiver's request for reimbursement of the insurance premiums, without prejudice. The parties agree that there is no need to carry extraneous insurance on the property, and we order them to confer forthwith about this issue and devise a sensible solution to avoid unnecessary insurance.

### C. Costs for, and Retention of, Eviction Counsel

Defendants additionally argue that Receiver's request to hire eviction counsel, and for reimbursement of $150 for eviction-related expenses, are unwarranted. (Obj. ¶¶ 9, 16–22; *see* Mot. to Approve Report & Suppl., Ex. A at 2–3 & Ex. B at 2, 4.) According to Receiver, Tenant neglected to renew the 2013 lease by its terms, prior to its expiration on December 31, 2013. (Mot. to Approve Report & Suppl., Ex. B. at 4.) Although we will not wade far into the facts, which may or may not be disputed, it is clear from the parties' submissions that Tenant has attempted to continue its rental of the property. As stated in the supplemental report, Receiver has rejected Tenant's continued efforts to pay monthly rent, which Tenant submitted by check on the same terms as set forth in the 2013 lease, for the months of January, February, and March of 2014. (*Id.* (reporting that the Receiver returned checks to Tenant); *see* Obj. ¶¶ 16–22 & Ex. 2 (copies of returned checks, with cover letters from the Receiver).)

Receiver implies that because Tenant failed to properly renew the lease under its terms, Receiver was not obligated to allow Tenant's continued rental of the property. Though perhaps not contractually bound to permit Tenant's continued rental, Receiver has an independent statutory obligation to manage the property prudently. *See* 735 ILCS 5/15-1704(c). Yet Receiver has not provided any rationale for its decisions to deny Tenant the continued rental and to reject Tenant's checks. Receiver's reports do not indicate any ongoing problems with Tenant or any issues concerning the amount of rent offered, the state of the property, or the business conducted there. Nor has Receiver indicated that another renter is interested in the property, or that some other factor requires Tenant's eviction.

Defendants apparently own Tenant, and they rent Tenant the property for corporate space. (Ver. Pet. to Appoint Receiver ¶ 4 (Dkt. No. 10); Mot. to Approve Report & Suppl.,

Ex. B at 2 ("The borrower utilizes the house as an office for his construction company.").) By virtue of this relationship, Defendants seek not only to maintain their business office but also to continue generating income for the property, thereby benefitting all parties and mitigating the extent of their alleged debts. Indeed, the $4,000 rent payments represent the only income for the property. Based on the record before us, Receiver has forbidden Tenant's continued rental of this distressed property, despite Tenant's desire and ability to do so. Under the circumstances—and absent any explanation that might demonstrate the prudence of this tactic—we cannot conclude that Receiver is entitled to retain eviction counsel, and we will not authorize reimbursement of any expenses already paid to eviction counsel.[1]

At this juncture, we deny Defendants' request for the removal of Receiver under 725 ILCS 5-15/1704(h), without prejudice. (Obj. ¶¶ 16–22.)

## CONCLUSION

The pending motions (Dkt. Nos. 39 and 74) are granted in part and denied in part. Other than Receiver's requests for certain reimbursements, as detailed above, Receiver's reports are approved. It is so ordered.

United States District Judge

Dated: Chicago, Illinois
May 8, 2014

---

[1] We remind Receiver that his decisions must consider and reflect not only the preferences of FirstMerit, but also the interests of Defendants and the expectations of the Court. *See* 735 ILCS 5/15-1704(c) (stating that a receiver "must manage the mortgaged real estate as would a prudent person, taking into account the effect of the receiver's management on the interest of the mortgagor").